IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| BETTY SUE FRANCIS, | ) | CIVIL ACTION NO. 9:14-1963-JMC-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

The Plaintiff filed the Complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) on March 10, 2011, alleging disability beginning February 25, 2011[1] due to ankle problems, bronchitis/asthma, and depression. (R.pp. 41, 203). Plaintiff's claim was denied both initially and upon reconsideration. Plaintiff then requested a hearing before an ALJ, which was held on December 4, 2012. (R.pp. 35-54). The ALJ thereafter denied Plaintiff's claim in a decision issued January 25, 2013. (R.pp. 12-28). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-6).

---

[1] Plaintiff filed a previous application for disability benefits which was denied by an Administrative Law Judge (ALJ) in an order dated February 24, 2011, the day before her current alleged disability onset date. (R.pp. 58-72). That order was not appealed; therefore, Plaintiff is precluded from alleging disability for anytime prior to February 25, 2011. 20 C.F.R. § 404.957(c)(1); McGowen v. Harris, 666 F.2d 60, 65 (4th Cir. 1981), citing Shrader v. Harris, 631 F.2d 297, 300-301 (4th Cir. 1980).



Plaintiff then filed this action in this United States District Court, asserting that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is generally limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also, Hepp v. Astrue, 511 F.3d 798, 806 (8th cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court



disagree with such decision as long as it is supported by substantial evidence." <u>Blalock v. Richardson</u>, 483 F.2d 773, 775 (4th Cir. 1972).

### <u>Discussion</u>

A review of the record shows that Plaintiff, who was forty-nine (49) years old on her alleged disability onset date, has a limited (eighth grade) education with past relevant work experience as a cleaner, sales attendant and cashier. (R.pp. 27, 39, 204, 211, 227, 278). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. Further, the record shows that Plaintiff has not worked since 2008, when she was laid off from her job, and therefore her eligibility for DIB expired on September 30, 2012. (R.pp. 73, 189). Hence, in order to be entitled to disability benefits, Plaintiff must show that her impairments became disabling by no later than that date. <u>See</u> 42 U.S.C. § 423(a)(1)(A), (c)(1)(B); <u>Johnson v. Barnhart</u>, 434 F.3d 650, 655-656 (4th Cir. 2005).

After a review of the evidence and testimony in this case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[2] of residuals of a left lower extremity fracture, right knee osteoarthritis, obesity, asthma, lumbar spine degenerative disc disease, and a bipolar disorder, thereby rendering her unable to perform any of her past relevant work, she nevertheless retained the residual functional capacity (RFC) to perform a reduced range of light

---

[2]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. <u>See</u> 20 C.F.R. § 404.1521(a); <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142 (1987).



work[3] through the date she was last insured for purposes of obtaining DIB, and she was therefore not entitled to disability benefits. (R.pp. 17, 20, 26-28).

Plaintiff asserts that in reaching this decision, the ALJ erred by failing to properly assess and consider the opinion of Plaintiff's treating physician, Dr. David Hong; by failing to properly explain her consideration of the ALJ's findings in the decision on her previous application for benefits; and by failing to properly consider and assess Plaintiff's subjective testimony as to the extent of her pain and limitations. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence in the case record to support the decision of the Commissioner, and that the decision should therefore be affirmed. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

## I.

### (Medical Evidence)

Plaintiff saw Dr. Hong, an internist with Grand Strand Internal Medicine, on April 6, 2010 for complaints of the flu and anxiety. Plaintiff complained of occasional wheezing when breathing, and that she had been having anxiety attacks since her mother died two months earlier. There is no indication that Plaintiff made any complaints relating to her ankles or knees. Plaintiff was provided some medications. (R.p. 304). Plaintiff returned to see Dr. Hong on July 6, 2010, with complaints about her asthma and low back pain. Plaintiff was continued on her previous

---

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



medications, and was also prescribed some Percocet for her low back pain. (R.p. 305).

   On July 26, 2010, Plaintiff presented to the Georgetown Hospital Emergency Room complaining of an injury to her right knee that had occurred three days ago. An x-ray was taken, which revealed no abnormalities; (R.p. 321); and an examination found no crepitus, effusion or swelling, that she had full range of motion, and a normal gait. Plaintiff was diagnosed with a minimal derangement of her right knee. (R.pp. 319-320). Plaintiff subsequently returned to the hospital on September 14, 2010, where objective findings were again unremarkable. It was also noted that Plaintiff had not followed up with orthopedics as had been recommended, and she was assessed as non-compliant. (R.pp. 322-323). Nevertheless, she returned again the following day, complaining of moderate aching in her right knee. She was noted to have no difficulty walking, no sensory loss or motor loss, and on examination her back had normal range of motion with no tenderness. Further, while Plaintiff complained of moderate tenderness in her right knee and mild swelling, she had no lower extremity edema, her lower extremities both had normal range of motion, she had no motor or sensory deficit, and her reflexes were normal. It was also noted that an x-ray of Plaintiff's right knee was negative. Plaintiff was assessed with a sprain/right knee pain/contusion and discharged in good condition. (R.pp. 290-291).

   On September 29, 2010, Plaintiff returned to see Dr. Hong, complaining of breathing problems, anxiety, and low back pain. Plaintiff told Dr. Hong that a friend had died recently and that her husband had recently been diagnosed with cancer. She also told Dr. Hong that she had been seen recently in the hospital emergency room for complaints of right knee pain, but that she had been unable to see an orthopedist due to finances. Plaintiff's Celexa was increased, she was continued on her Percocet, and she was given a prescription for Meloxicam. (R.p. 306).



Plaintiff returned to the hospital on various occasions in October and November 2010 complaining about upper abdominal pain, and on December 21, 2010 she had a laparoscopic cholecystectomy performed for chronic cholecystitis.[4]  (R.pp. 288-289).

On December 30, 2010, Plaintiff was seen at the Waccamaw Mental Health Center (per suggestion of her lawyer) with complaints of poor concentration and being depressed.  Plaintiff complained that the Celexa that had been prescribed by Dr. Hong was not helping, and reported irritability and interrupted sleep.  Plaintiff stated that both she and her husband had a history of alcoholism, although both had "stopped" in November 2008, as well as that she had overdosed on prescription medications after she had broken her ankle, but did not tell anyone.  On examination Plaintiff was found to be alert and oriented, she had a normal appearance, she had no psychomotor abnormalities (although her behavior was described as "guarded"), she exhibited fair judgment and insight, while her thought content was impaired by anger and impulsivity.  Plaintiff was assessed with bipolar disorder (moderate) and was assigned a GAF of 50.[5]  (R.pp. 278-279).

Plaintiff was seen back at the hospital emergency room on January 11, 2011 complaining of chronic pain in her left ankle since a fracture and surgery she had had a year ago.  Plaintiff described her pain as being "severe", not relieved by anything - and worsened by standing

---

[4]Swelling and inflamation of the gallbladder that continues over time. http://www.mayoclinic.org/diseases-conditions/cholecystitis/basics/definition/con-20034277, August 28, 2014.

[5]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999). "A GAF score of 41 to 50 is classified as reflecting 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job.)'". Boyd v. Apfel, 239 F.3d 698, 702 (5th Cir. 2001).



and walking. Plaintiff had an x-ray taken, which showed post surgical changes with lateral plate and screw fixation on the distal left fibula, no step-off to suggest acute fracture seen, with degenerative changes at the left tibial talar joint most compatible with post-traumatic osteoarthritis. (R.pp. 296-297). On examination Plaintiff complained of moderate tenderness in her left ankle, but she had no limitation in her range of motion, no lower extremity edema, no swelling or deformity, and no signs of infection. The radiologist interpreted Plaintiff's x-ray as reflecting "post surgical changes. Nothing acute". It was also noted that although Plaintiff complained about having run out of her pain medications, she had only recently filled her prescription, causing the physician to note that "clearly she should have plenty of the pain meds left and I am unwilling to write for more narcotics". Plaintiff was diagnosed with left ankle pain and discharged. (R.pp. 284-286).

Plaintiff returned to see Dr. Hong on January 24, 2011, complaining of breathing problems, depression/anxiety, and fever with a runny nose and coughing. Her breathing was noted to be doing "ok", and she was continued on her anxiety medication and her Percocet. (R.p. 308).

Plaintiff returned to the hospital emergency room on January 31, 2011, complaining that she had injured herself when she had slipped and fallen when trying to get out of a chair. Plaintiff complained of pain in her upper back and right shoulder. On examination there was no evidence of trauma, her breathing sounds were normal, and neurologically she was oriented x3. On examination she was noted to have full range of motion in her right knee with no deformity, but she displayed tenderness in her back. (R.pp. 365-366). An x-ray of Plaintiff's right knee showed normal alignment with no fracture and moderate diffuse joint space narrowing with mild narrowing at the patellofemoral compartment. An x-ray of Plaintiff's right shoulder showed mild degenerative changes with normal boney alignment, with no fracture or abnormal erosion. An x-ray of Plaintiff's



thoracic spine was also essentially normal. (R.pp. 367-369). Plaintiff was assessed with a contusion to her arm and a right knee strain.

Plaintiff was back at the hospital on February 3, 2011, complaining of an injury to her left ankle that had happened the previous day when she tripped at home and landed on a hard surface. Review of systems showed no swelling, tingling, weakness, or numbness, Plaintiff had no skin laceration and exhibited no pain on weight bearing, her breathing sounds were found to be normal, and she was in no respiratory distress. Plaintiff complained of "mild tenderness" in her left ankle with limited range of motion secondary to pain, but x-rays of Plaintiff's left ankle were negative. She was assessed with a sprained right knee and left ankle, and was discharged in stable condition. (R.pp. 281-282).

As noted, Plaintiff's impairments have already been found to not be disabling during the time period represented by the medical records discussed hereinabove. In the decision issued in Plaintiff's previous case on February 24, 2011, it was determined that as of that date Plaintiff had severe impairments of residuals of fracture to the lower extremity, osteoarthritis knee pain, obesity, and asthma, but that she was not disabled because she could still perform a restricted range of sedentary work.[6]  (R.pp. 60, 63, 66-67).

On March 17, 2011 Plaintiff was seen at the Waccamaw Mental Health Center, where she had "walk[ed] in requesting medication". The entry note reflects that Plaintiff was advised that she had been provided with a ninety day supply of medications on February 3, 2011, and that she

---

[6]Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).



should therefore have medicine. Plaintiff reported that people had been living in her house, and that they "must have taken it" because she had little medication left. Plaintiff was provided with some samples, and told that she needed to make sure she had a secure location for her medications. (R.p. 303).

Plaintiff returned to see Dr. Hong on April 25, 2011, where again her complaints were low back pain and breathing problems, along with allergies. Plaintiff advised Dr. Hong of her ER visits, but although she had been told to see an orthopedist, she acknowledged had not yet made an appointment. Her breathing was noted to be "ok". She wanted some Zanex, but Dr. Hong continued her on Klonopin and did not give her Zanex. (R.p. 307).

Plaintiff thereafter returned to the Waccamaw Center on May 26, 2011 for a followup, where she complained that her thoughts continued to "race" and that she was easily irritable. It was noted that Plaintiff had "originally [come] at her lawyer's suggestion because she is applying for disability due to injured knee and ankle. She said she was trying for psychiatric disability as well. However, since she has cancelled or no-showed for appts she does not appear to be seeking help." The report further notes that Plaintiff was given a list of free or sliding scale clinics where she could receive routine care as well as labs, but that Plaintiff "[did] not appear motivated to do so". On examination Plaintiff was noted to be alert and oriented. While she had no psychomotor abnormalities, her behavior was described as "hostile". Plaintiff continued to be diagnosed with bipolar disorder (moderate), and she was assigned a GAF of 45. (R.pp. 309-310).

Plaintiff returned to the hospital emergency room on June 23, 2011, where she was seen by Dr. Janice Hart. Plaintiff complained of left ankle pain and right knee pain, although she was noted to have been ambulatory into the ER. It was also noted that while she had had no recent



trauma, she had had a fracture of her left ankle in 2009 for which she had had surgery,  On examination Plaintiff's left ankle had no arrhythmia and no warmth to the touch, and she had normal pulses, sensory, and capillary refill.  Plaintiff complained of mild tenderness to the touch, but her ankle did not appear swollen and she had full range of motion.  Plaintiff's right knee was also "mildly tender" and was noted to have "somewhat of a valgus deformity".  However, the patella did not appear dislocated, there was no arrhythmia and no warmth to the touch, Plaintiff had full extension, she was able to flex about 30 degrees, and her collateral ligaments were intact, although Plaintiff complained of pain on movement.  Plaintiff had an x-ray taken of her right knee, which showed some minimal spurring with no fractures or dislocations seen.  (R.p. 375).  Plaintiff was diagnosed with right knee pain, left ankle pain, was given a prescription and placed in a long right knee immobilizer, and discharged.  (R.pp. 373-374).

Dr. Hong performed a physical examination on June 27, 2011 that was essentially unremarkable.  (R.p. 442).

Plaintiff returned to the Waccamaw Center on June 29, 2011 for a followup, at which time it was noted she was pregnant.  Plaintiff reported that she was doing better in the evening after taking her medications, but had a difficult time during the day.  Plaintiff was also sleeping through the night, but said her thoughts were "racing" during the day.  A mental status examination was basically unremarkable, and her GAF was back up to 50.  (R.pp. 376-377).

On July 7, 2011, Dr. Lisa Varner reviewed Plaintiff's medical records and completed a Psychiatric Review Technique form in which she opined that Plaintiff's depression, bipolar disorder and anxiety resulted in only a mild restriction in her activities of daily living, and moderately restricted her social functioning and her ability to maintain concentration, persistence or



pace, with no episodes of decompensation. Dr. Varner also completed a Mental Residual Functional Capacity Assessment in which she opined that Plaintiff was moderately limited in her ability to understand, remember or carry out detailed instructions, or maintain attention and concentration for extended periods and work at a consistent schedule and pace or interact appropriately with the general public, but otherwise had no significant limitations in her understanding and memory, concentration and persistence, social interaction, or ability to adapt. (R.pp. 378-394).

The following day (July 8, 2011), Dr. Mary Lang completed a Physical Residual Functional Capacity Assessment in which she opined that Plaintiff had the RFC for light work with the ability to stand and/or walk (with normal breaks) for about six hours in an eight hour work day, and sit (with normal breaks) for about six hours in an eight hour work day, with an unlimited ability to push and/or pull (including operation of hand and/or foot controls). She further opined that Plaintiff could occasionally perform all postural limitations with the exception of climbing ladders/ropes/scaffolds, which Plaintiff should never do. Plaintiff had no manipulative, visual, communicative, or environmental limitations. (R.pp. 396-403).

On August 19, 2011, Dr. Michael Neboschick completed a Psychiatric Review Technique form in which he reached the same mental findings and conclusions with respect to Plaintiff's condition as had Dr. Varner. (R.pp. 408-420, 430-432). On that same date, Dr. Jean Smolka completed a Physical Residual Functional Capacity Assessment in which she reached the same physical RFC findings as had Dr. Lang, except Dr. Smolka believed that Plaintiff should avoid concentrated exposure to fumes, dust, and poor ventilation. (R.pp. 422-429).

On August 24, 2011, Plaintiff returned to the Waccamaw Center for a followup, where it was noted that Plaintiff had run out of medications about a month ago but had not called



for refills until five (5) days ago. It was noted also that while Plaintiff was off of her meds she did not do well; having trouble sleeping, racing thoughts, and feeling "bad" and irritable. Plaintiff's "excuse [was] that she was out of town" and could not pick up her medications. Plaintiff's mental status examination reported poor judgment for non-compliance, but otherwise reflected mostly normal findings. Plaintiff's assigned GAF remained at 50. (R.pp. 459-460). Plaintiff returned to the Waccamaw Center on October 5, 2011, where she reported that she was feeling better. Plaintiff was sleeping well and said she did not worry as much as she used to. Plaintiff's GAF was up to 55.[7] (R.pp. 457-458).

Plaintiff returned to see Dr. Hong on October 24, 2011, where her asthma was noted as being "ok", and she was trying an electronic cigarette (apparently to stop smoking). Her medications were continued. (R.p. 439). A physical examination conducted that date showed that psychiatrically Plaintiff was alert and oriented x3 with an appropriate affect, that she had no respiratory problems, that her extremities displayed no clubbing, cyanosis, or edema, and that neurologically she was grossly intact with no focal deficits. (R.p. 440). Plaintiff thereafter returned to the Waccamaw Center on December 1, 2011 for a followup, where she reported that she had been doing "alright". Mental status examination was essentially normal. Her GAF remained at 55. (R.pp. 455-456).

Plaintiff returned to see Dr. Hong on April 19, 2012, where she reported having come down a second time with bronchitis. She also complained of increasing left ankle pain. Other than wheezing and related respiratory effects of her bronchitis, and some edema in her left ankle, physical

---

[7]A GAF of 51 to 60 indicates the presence of only moderate symptoms. <u>Perry v. Apfel</u>, No. 99-4091, 2000 WL 1475852 at *4 (D.Kan. July 18, 2000); <u>Matchie v. Apfel</u>, 92 F.Supp.2d 1208, 1211 (D.Kan. 2000)



examination was essentially normal.  Her medications were continued.  (R.pp. 435-436).  At a followup visit to the Waccamaw Center on April 30, 2012, Plaintiff's chief complaint was "sleep inadequacy".  A mental status examination was essentially normal, and her GAF remained at 55. (R.p. 453-454).

On May 5, 2012, Dr. Hong completed a medical questionnaire regarding physical abilities that had been provided by Plaintiff's attorney.  Dr. Hong stated that he had diagnosed Plaintiff with asthma, low back pain and depression/anxiety.  He further opined that Plaintiff could walk, stand and sit, all less than one hour without interruption.  He also opined that Plaintiff was unable to work an eight hour day, five day work week due to her severe asthma and low back pain. He opined that Plaintiff could frequently lift less than five pounds, occasionally lift up to ten pounds, but never lift more than that; that Plaintiff was restricted in her ability to climb stairs/ladders and bend; that Plaintiff would be required to take a rest break every thirty minutes; that Plaintiff's impairments caused her to experience "severe" pain; that her condition was not expected to improve; and that he believed Plaintiff could perform less than a full range of sedentary work.  However, Dr. Hong further added in the comment section to this report that he does not do disability testing, that this report had been completed "by patient history", and that no appointment had been made to specifically address the questions set forth in the report.  (R.pp. 444-447).

On May 31, 2012, Plaintiff was seen back at the Waccamaw Center, where it was noted that Plaintiff had a "very good response to Ambien", that her "condition [was] improving slowly", and that only "minimal symptoms still prevail".  A mental status examination was essentially unremarkable, and her GAF was 50.  (R.pp. 451-452).  When Plaintiff returned on June 26, 2012, she stated that she had "no complaints today", and the treatment note reflects that Plaintiff



"appeared asymptomatic and clinically stable". A mental status examination was essentially normal, and her GAF was 60. (R.pp. 449-450).

Plaintiff returned to the hospital emergency room on July 11, 2012, complaining of low back pain increasing over the past few days. Plaintiff reported that three days ago, while reaching up to a cabinet, she had fallen down and landed on her back, injuring her left ankle. Plaintiff complained of spasms in the lumbar regions bilaterally, but on examination Plaintiff was found to be ambulatory and in no acute distress, her lungs were clear bilaterally, she had no spine tenderness to palpation, no CVA tenderness bilaterally, and there were no bruises noted on her back. With respect to her left ankle, she again complained of tenderness, but there was no obvious swelling, she had good range of motion of the ankle, her Achilles tendon was intact, she had good pedal pulse, and no neurovascular deficit. A spine x-ray was ordered, which showed mild degenerative arthritic and disc disease without change since her previous x-ray, with no apparent lumbar spine fracture or malalignment. (R.p. 471). A separate x-ray of Plaintiff's left ankle also showed mild degenerative arthritis, Plaintiff's prior bimalleolar internal fixation, and no visible acute left ankle fracture. (R.p. 470). The medical note states that Plaintiff "is essentially here to get pain medicine because she ran out of her Percocet". Plaintiff was diagnosed with chronic back pain, she was given a prescription refill, and discharged in stable condition. (R.pp. 467-468).

## II.

### (Treating Physician Opinion)

Plaintiff initially asserts that the ALJ committed reversible error by failing to give controlling weight to the May 2012 opinion of her family physician, Dr. Hong, that Plaintiff could perform less than a full range of sedentary work and was unable to work an eight hour day, five day work week due to her severe asthma and low back pain. While Plaintiff is correct that a treating



physician's opinion can be entitled to "great weight", the ALJ gave Dr. Hong's responses on the May 2012 medical questionnaire no weight, finding that the extent of limitation set forth therein was unsupported by the evidence of record, including Dr. Hong's own treatment notes, and was based primarily on Plaintiff's subjective complaints. (R.p. 26). After careful review of the record, the undersigned can find no reversible error in the ALJ's treatment of this evidence. Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996) [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) ["[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted) ]; see also Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].

In rejecting Dr. Hong's opinion that Plaintiff was as limited as indicated in the questionnaire he filled out on May 5, 2012, the ALJ noted Dr. Hong's own records showing that Plaintiff's asthma and low back pain had been generally stable over time, and that she has received only conservative treatment with no significant exacerbations or medication adjustments, no hospitalizations, and no specialist treatment for these conditions. (R.p. 26). Cf. Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) [generally conservative treatment not consistent with allegations of disability]. These findings are supported by substantial evidence in the case record of Dr. Hong's treatment notes, including specifically his physical examinations of the Plaintiff on June 27, 2011 October 24, 2011, and April 19, 2012, all of which were essentially unremarkable. See generally (R.pp. 304-308, 439-442, 435-436). Burch v. Apfel, 9 F. App'x 255 (4th Cir. 2001)[ALJ did not err in giving physician's opinion little weight where the physician's opinion was not consistent with her own progress notes]; see also Trenary v. Bowen, 898 F.2d 1361, 1364 (8th



Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations].

      The ALJ further noted that Dr. Hong specifically stated that he had not conducted any additional examination before completing the medical questionnaire (which had been provided to him), that Plaintiff had not made an appointment to specifically address the questions set forth in the questionnaire before hand, and that he had completed the report by "patient history". (R.p. 26); <u>see</u> (R.pp. 444-447). As the ALJ found that Dr. Hong's own medical records did not reflect impairments justifying the functional limitations set forth by Dr. Hong in the questionnaire, the ALJ further concluded that the limitations opined to by Dr. Hong were based primarily on Plaintiff's subjective complaints. <u>Cf</u>. <u>Craig</u>, 76 F.3d at 589-590 ["There is nothing objective about a doctor saying, without more, 'I observed my patient telling me she was in pain'"]; <u>Mastro v. Apfel</u>, 270 F.3d 171, 178 (4th Cir. 2001) [ALJ may assign lesser weight to the opinion of a treating physician that was based largely upon a claimant's self-reported symptoms]; <u>see also</u> <u>Johnson</u>, 434 F.3d at 658 [ALJ properly rejected physician's opinion that was based on the claimant's own subjective complaints]. While Plaintiff objects to this finding, there is nothing improper or reversible about the ALJ reaching this conclusion based on Dr. Hong's statements and the record in this case. <u>Abez Velez v. Sec't of HHS</u>, No. 92-2438, 1993 WL 177139, at * 7 (1st Cir. May 27, 1993) [Proper for ALJ to draw inferences from the evidence]; <u>Poling v. Halter</u>, No. 00-40, 2001 WL 34630642, at * 7 (N.D.W.Va. Mar. 29, 2001) ["It is the duty of the ALJ, rather than the reviewing court, to assess the evidence of record and draw inferences therefrom"], citing <u>Kasey v. Sullivan</u>, 3F.3d 75, 79 (4th Cir. 1993).

      Further, in addition to the paucity of evidence from Dr. Hong's own practice to support the degree of limitation claimed by Plaintiff and opined to by Dr. Hong in the May 2012 questionnaire, the ALJ also cited to the records from Plaintiff's emergency room and mental health



visits, which consistently document minimal findings on physical examination as well as on x-rays, that Plaintiff has been non-compliant with treatment recommendations, that she is able to move about generally well and sustain consistent function, that she has few musculoskeletal abnormalities, that not withstanding her complaints of asthma she continued to smoke a pack of cigarettes a day(as well as that Plaintiff reported her asthma way okay in October 2011 after she had cut back on her smoking), that even with her continued smoking her asthma has generally been well controlled, that Plaintiff was inconsistent in seeking mental health care (including canceling or not showing for appointments as well as at one point going for six months without seeing a psychiatrist), that Plaintiff had essentially normal mental status examinations, and that by June 2012 she appeared asymptomatic and specifically stated that she had no complaints or mental symptoms. See generally, (R.pp. 22-25); see also (R.pp. 278-279, 281-282, 284-286, 290-291, 309-310, 319-323, 365-369, 373-377, 445-460, 467-468, 470-471). See Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessments of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; Craig, 76 F.3d at 589-590 [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Krogmeier, 294 F.3d at 1023 ["[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted) ].

While not finding Plaintiff's impairments are of a disabling severity, the ALJ did find that the record of Plaintiff's documented impairments and her complaints of ongoing pain provided reasonable support for ongoing postural and environmental limitations generally consistent with those found in the prior decision, as well as for restrictions on pushing and pulling with her lower extremities and climbing ladders, ropes, or scaffolds, a limitation on climbing ramps and stairs, and



for a sit/stand option to account for Plaintiff's intermittent residual left ankle pain and degenerative disc disease with low back pain. The ALJ also imposed postural restrictions and limitations (particularly with respect to balancing for safety and exposure to hazards) to account for Plaintiff's obesity, a restriction on exposure to respiratory irritants to account for Plaintiff's intermittent breathing problems, as well as a limitation to the performance of simple, routine, repetitive tasks with no more than occasional public interaction to account for Plaintiff's mental impairment, even though the evidence reflects that Plaintiff's mental symptoms have largely resolved with treatment since April 2012. See (R.pp. 23-26).

The ALJ's finding that Plaintiff has these limitations does not, however, mean that Plaintiff is disabled or entitled to disability benefits. Cruse v. Bowen, 867 F.2d 1183, 1186 (8[th]Cir. 1989)["The mere fact that working may cause pain or discomfort does not mandate a finding of disability]; see also Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [The mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss]. The ALJ specifically incorporated all of these limitations into Plaintiff's RFC; (R.p. 20); following which the Vocational Expert identified several jobs that Plaintiff could perform with these limitations. (R.pp. 28, 49-52). Again, there is no reversible error shown in the ALJ's treatment of this evidence. Welch v. Heckler, 808 F.2d 264, 270 (3d Cir.1986)[findings of moderate pain or discomfort were appropriately accounted for in a reduced RFC finding]; Thomas v. Celebreeze, 331 F.2d 541, 543 (4th Cir. 1964) [court scrutinizes the record as a whole to determine whether the conclusions reached are rational].

Finally, the ALJ also considered the opinions of the state agency medical consultants in reaching his conclusions. (R.pp. 25-26). With respect to the psychological consultants, he gave great weight to their findings that Plaintiff was moderately limited in her ability to interact



appropriately with the general public, and incorporated this impairment into Plaintiff's RFC by limiting her to only occasional interaction with the public. She also gave great weight to their findings that Plaintiff was moderately limited in her ability to perform or carry out detailed instructions by limiting her to the performance of simple, routine, repetitive tasks; and accommodated their findings that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods and complete work without interruptions by limiting her to the performance of simple, routine repetitive tasks for no more than two hours at a time. (R.pp. 20, 25). Smith, 795 F.2d at 345 [Opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner]; cf. Ponder v. Colvin, 770 F.3d 1190, 1195 (8th Cir. 2014) [noting that opinions from state agency consultants may be entitled to even greater weight than the opinions of treating or examining sources].

The ALJ also accorded great weight to the physical RFC findings of the state agency medical consultants, while also giving Plaintiff every benefit of the doubt by adding some *additional* physical limitations to Plaintiff's RFC in order to further accommodate Plaintiff's complaints of intermittent residual symptoms of left ankle, right knee, and low back pain in combination with her obesity. (R.p. 26). See Marquez v. Astrue, No. 08-206, 2009 WL 3063106 at * 4 (C.D.Cal. Sept. 21, 2006)[No error where ALJ's RFC finding was even more restrictive than the exertional levels suggested by the State Agency examiner]; see also Silver v. Colvin, No. 11-303, 2014 WL 4160009 at * 5 (M.D.NC. Aug. 19, 2014) [Same]; cf. Muir v. Astrue, No. 07-727, 2009 WL 799459, at * 6 (M.D.Fla. Mar. 24, 2009)[No error where ALJ gave Plaintiff even a more restrictive RFC than the medical records provided]; Welch, 808 F.2d 264, 270 (3d Cir.1986)[findings of moderate pain or discomfort were appropriately accounted for in a reduced RFC finding].

In sum, after a thorough review of the evidence the ALJ determined that Plaintiff



could perform light work limited to no pushing or pulling with the lower extremities together with the other restrictions set forth in the decision.  (R.p. 20).  The ALJ determined that these restrictions would accommodate Plaintiff's condition consistent with the medical evidence documenting her impairments, while also giving Plaintiff every benefit of the doubt in determining an appropriate RFC for her.  There is no reversible error shown with respect to the ALJ's findings, nor does the undersigned find that the ALJ committed any reversible error in his consideration of the opinion of Dr. Hong consistent with the totality of the evidence in the record.  Thomas, 331 F.2d at 543 [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; Krogmeier, 294 F.3d at 1023  ["[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted) ]; cf. Craig, 76 F.3d at 589-590 ["There is nothing objective about a doctor saying, without more, 'I observed my patient telling me she was in pain'"]; Poling v. Halter, No. 00-40, 2001 WL 34630642, at * 7 (N.D.W.Va. Mar. 29, 2001) ["It is the duty of the ALJ, rather than the reviewing court, to assess the evidence of record and draw inferences therefrom"], citing Kasey v. Sullivan, 3 F.3d 75, 79 (4th Cir. 1993).

Therefore, this claim is without merit.  Gross, 785 F.2d at 1166 [The mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss]; Andreolli v. Comm'r of Soc. Sec., 2008 WL 5210682, at *4 (W.D.Pa. Dec. 11, 2008) ["It is well settled that a claimant need not be pain-free or experiencing no discomfort in order to be found not disabled" (citing Welch v. Heckler, 808 F. 2d at 270)]; Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996) ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; Plummer v. Astrue, No. 11-6, 2011 WL 7938431, at * 5 (W.D.N.C. Sept. 26, 2011)[It is the clamant who bears the burden of providing evidence establishing



the degree to which his impairment limits his RFC], <u>adopted by</u> 2012 WL 1858844 (May 22, 2012), aff'd. 47 Fed. Appx. 795 (4th Cir. 2012).

### III.

### (Prior Decision)

The February 2011 decision on Plaintiff's previous application found that Plaintiff was limited to a restricted range of sedentary work, and Plaintiff notes that if the current ALJ had also found in the decision currently before the Court that Plaintiff was limited to sedentary work, she would qualify for disability under the Medical-Vocational Guidelines (i.e., the "Grids"),[8] since she was found to be limited to unskilled work and was fifty years old by her date last insured. <u>See</u> 20 C.F.R. pt. 404, subpt. P, Rule 201.09. However, since the ALJ in this case found Plaintiff could perform a restricted range of light work, she is not deemed disabled under the Guidelines. <u>See</u> 20 C.F.R. pt. 404, subpt. P, Rule 210.10. Plaintiff asserts that the ALJ committed error by failing to properly explain her consideration of the findings of the Administrative Law Judge in the previous decision, but a review of the decision shows that the ALJ specifically identified and addressed this issue. Plaintiff simply disagrees with the decision reached.

Acquiescence ruling (AR 00-1(4), 2000 WL 43774 (SSA), provides that in determining the weight to give a prior finding, the ALJ should consider whether the prior finding relating to the severity of a claimant's medical condition was subject to change with the passage of

---

[8]"The grids are matrices of the 'four factors identified by Congress -- physical ability, age, education, and work experience -- and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy.'" <u>Daniels v. Apfel</u>, 154 F.3d 1129, 1132 (10th Cir. 1998) (quoting <u>Heckler v. Campbell</u>, 461 U.S. 458, 461-462 (1983)). "Through the Grids, the Secretary has taken administrative notice of the number of jobs that exist in the national economy at the various functional levels (i.e., sedentary, light, medium, heavy, and very heavy.)" <u>Daniels</u>, 154 F.3d at 1132.



time, the likelihood of such a change considering the length of time that had elapsed, and the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the new claim.  AR 00-1(4), 2000 WL 43773, at * 4.  If the agency produces substantial evidence of improvement in a claimant's condition, a prior finding to the contrary need not be sustained.  Albright v. Commissioner, 174 F.3d 473, 477 (4th Cir. 1999), citing Lively v. Secretary, 820 F.2d 1391, 1392 (4th Cir. 1987); see Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

The ALJ specifically addressed the requirements of AR 00-1(4), Albright and Lively in her decision, and found that "the evidence of record fails to show ongoing problems associated with [Plaintiff's] physical impairments that would continue to limit her to sedentary work", all as is more particularly described in detail in the decision.  (R.p. 22).  Again, the undersigned can find no reversible error in the ALJ's findings and conclusions with respect to this issue.  In determining that Plaintiff could perform light work, the ALJ noted that Plaintiff had failed to complain of left ankle pain at regular primary care followup visits for almost a year after her previous decision, until she reported some left ankle pain in January 2012 and April 2012, that emergency treatment records from July 2012 showed no acute findings on physical examination or on x-rays of the left ankle, and that the minimal physical findings in the post-February 2011 decision records as well as the significant periods of time during which Plaintiff had no complaints of ankle pain no longer supported a limitation of work at the sedentary range.  (R.p. 22).  The ALJ further noted that the medical evidence documented no further complaints of right knee pain until an April 2011 primary care visit, that x-rays of Plaintiff's right knee in June 2011 revealed only minimal degenerative joint disease, that there were also only minimal findings on physical examinations, and that there was no



record of right knee problems since June 2011. (R.p. 23). Finally, the ALJ also noted the opinions of the state agency medical consultants from July and August 2011 showing that Plaintiff could perform at a level of light work activity. (R.p. 26).

The undersigned is also constrained to note that Plaintiff did not turn fifty until January 25, 2012, almost a year after her previous decision. (R.p. 27). Cf. Albright, 174 F.3d at 477 [Noting that although it might could be stated with some assurance that a claimant's condition very likely remains unchanged immediately after the issuance of a prior decision, "we . . . grow ever less confident [that a claimant's condition may not have changed] as the timeframe expands"]. Plaintiff's medical records from after that date show that when Plaintiff was seen by Dr. Hong on April 19, 2012, other than some edema in her left ankle, her physical examination was essentially normal. (R.pp. 435-436). When Plaintiff was thereafter seen in the hospital emergency room on July 11, 2012, she was found on examination to be ambulatory and in no acute distress, she had no spine tenderness to palpation, no CVA tenderness bilaterally, there was no obvious swelling in her left ankle, she had good range of motion of the ankle, her Achilles tendon was intact, she had good pedal pulse, and no neurovascular deficit. (R.pp. 467-468). A spine x-ray that day showed only mild degenerative arthritic and disc disease without change, and no apparent lumbar spine fracture of malalignment (Plaintiff was at the hospital because she said she had fallen three days ago), while a separate x-ray of Plaintiff's left ankle also showed only mild degenerative arthritis, Plaintiff's prior bimalleolar internal fixation, and no visible acute left ankle fracture. (R.pp. 470-471).

The record discussed hereinabove contains substantial evidence to support the finding of the ALJ in the current decision that a limitation to light work with the restrictions noted was appropriate; see discussion, supra; and that a limitation to work at the sedentary level was no longer supported. (R.p. 22). See Hays, 907 F.2d at 1456 [If there is evidence to justify refusal to direct a



verdict were the case before a jury, then there is 'substantial evidence']; <u>Hepp</u>, 511 F.3d at 806 [Noting that the substantial evidence standard requires even less than a preponderance of the evidence]. While Plaintiff argues that this Court should be bound by the previous decision's limitation of her to sedentary work, this Court may not overturn the current decision when it is supported by substantial evidence just because the record may contain conflicting evidence. <u>Smith</u>, 99 F.3d at 638 ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]; <u>see</u> <u>also</u> <u>Guthrie v. Astrue</u>, No. 10-858, 2011 WL 7583572, at * 8 (S.D.Ohio Nov. 15, 2011), <u>adopted by</u>, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012)[Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."]; <u>Kellough v. Heckler</u>, 785 F.2d 1147, 1149 (4th Cir. 1986) ["If the Secretary's dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)]. Therefore, this argument is without merit.

## IV.

### (Credibility Determination)

Plaintiff's final contention is that the ALJ committed reversible error in her evaluation of the subjective testimony and evidence in this case. Specifically, Plaintiff argues that the ALJ failed "to explain how she finds [Plaintiff] to be less than credible with regard to her physical allegations". <u>Plaintiff's Brief</u>, p. 27. However, the ALJ clearly discussed Plaintiff's testimony in the decision, including her testimony that she could only stand for about fifteen minutes at a time, cannot get out of bed about six days each month, cooks in the oven because she cannot stand at the stove, has difficulty walking, and has to take frequent breaks to sit down an rest. (R.p. 21); <u>see</u> <u>generally</u>, (R.pp. 43-45). He also noted, however, that Plaintiff testified she attended church every



Sunday, was able to do small loads of laundry, and that she could vacuum, put away dishes, and clean a little bit, as well that in a May 2011 Function Report she reported no problems with activities of personal care, including that she was able to prepare meals, clean, and do laundry daily, although she said she had to rest frequently. (R.pp. 21, 221).

While the ALJ did find that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the symptoms she alleged, she found that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms was not entirely credible based on the entire record, including both the subjective and objective evidence. (R.pp. 21-22). That is exactly what the ALJ is supposed to have done; see SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996) [Where a claimant seeks to rely on subjective evidence to prove the severity of her symptoms, the ALJ "must make a finding on the credibility of the individual's statements, based on a consideration of the entire case record."]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; and when objective evidence conflicts with a claimant's subjective statements, an ALJ is allowed to give the statements less weight. See SSR 96–7p, 1996 WL 374186, at *1; Craig, 76 F.3d 595 ["Although a claimant's allegations about his pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment."].

After a review of the record and evidence in this case, the undersigned can find no reversible error in the ALJ's treatment of the subjective testimony given by the Plaintiff. The ALJ did not conduct an improper credibility analysis, nor does the decision otherwise reflect a failure to



properly consider the affect Plaintiff's impairments had on her ability to work. Rather, the record and evidence cited by the ALJ provides substantial evidence to support the ALJ's findings as to the extent of Plaintiff's limitations. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]; Hays, 907 F.2d at 1456 [If there is evidence to justify refusal to direct a verdict where the case before a jury, then there is 'substantial evidence']; see also Ables v. Astrue, No. 10–3203, 2012 WL 967355, at *11 (D.S.C. Mar. 21, 2012) ["Factors in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant.", citing to SSR 96–7p.]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976)[finding that the objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; see also Guthrie v. Astrue, No. 10-858, 2011 WL 7583572, at * 8 (S.D.Ohio Nov. 15, 2011)["[I]t is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, or testimony, and other evidence"]; Parris v. Heckler, 733 F.2d 324, 327 (4th Cir. 1984) ["[S]ubjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof." (citation omitted)].

While Plaintiff seeks to have this Court give precedence to her testimony as opposed to the other evidence of record and substitute its own judgment for that of the ALJ, that is not the proper standard for review in a Social Security case. Smith, 99 F.3d at 638 ["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]. Therefore, this claim is without merit. Bowen, 482 U.S. at 146 [Plaintiff has the burden to show that he has a disabling



impairment]; <u>Lee v. Sullivan</u>, 945 F.2d 687, 692 (4th Cir. 1991)[ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record].

## **Conclusion**

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984).  As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision.  <u>Blalock</u>, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period.  Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

April 20, 2015
Charleston, South Carolina



27

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

28

